IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-102

 No. 339A20

 Filed 27 August 2021

 IN THE MATTER OF: Z.G.J.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 30 April

 2020 by Judge Christine Underwood in District Court, Iredell County. This matter

 was calendared in the Supreme Court on 9 June 2021 but determined on the record

 and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules

 of Appellate Procedure.

 Lauren Vaughan for petitioner-appellee Iredell County Department of Social
 Services.

 Stephen M. Schoeberle for appellee Guardian ad Litem.

 Jeffrey L. Miller for respondent-appellant mother.

 HUDSON, Justice.

¶1 Respondent appeals from the trial court’s orders terminating her parental

 rights to her minor child Z.G.J. (Ann).1 She raises four main arguments on appeal:

 (1) that the social worker who signed the termination of parental rights petition

 lacked standing to file the petition; (2) that the trial court improperly relied only on

 the termination petition when assessing whether grounds existed to terminate

 1 A pseudonym chosen by the parties is used to protect the identity of the minor child

 and for ease of reading.
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 respondent’s rights; (3) that the trial court’s findings of fact do not support its

 determination that respondent’s parental rights were subject to termination based

 on neglect, willfully leaving Ann in foster care or a placement outside the home for

 more than twelve months without making reasonable progress toward correcting the

 conditions that led to her removal, willfully failing to pay a reasonable portion of

 Ann’s cost of care for the six months preceding the filing of the petition, and

 dependency; and (4) that respondent received ineffective assistance from her trial

 counsel. After review, we conclude the trial court’s findings of fact do not support its

 conclusion that grounds for termination existed, and we reverse the termination

 orders.

 I. Background

¶2 Petitioner Iredell County Department of Social Services (DSS) became

 involved with Ann’s family beginning in August 2016 after DSS received a Child

 Protective Services (CPS) report alleging that Ann’s parents were using a variety of

 drugs in front of Ann, engaging in domestic violence, and failing to supervise Ann,

 who was not yet two years old. DSS began providing services to the family but only

 received minimal cooperation with these services.

¶3 In the ensuing months, DSS received three more CPS reports which included

 more allegations of substance abuse and domestic violence by Ann’s parents. The last

 of these reports was received on 14 February 2017 and reflected that respondent had
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 overdosed and was found lying on the ground next to a vehicle where Ann was

 strapped into her car seat inside. Witnesses reported that both of Ann’s parents had

 been shooting up heroin in the back of the vehicle. Both parents were charged with

 misdemeanor child abuse. The next day, DSS filed a petition alleging that Ann was

 an abused and neglected juvenile and obtained nonsecure custody.

¶4 On 21 March 2017, the parties entered into consent adjudication and

 disposition orders. Ann was adjudicated to be abused and neglected. In order to

 remedy the issues which led to Ann’s removal, respondent was ordered to enter into

 and comply with a case plan, to cooperate with DSS and the guardian ad litem, to

 submit to substance abuse and domestic violence evaluations and comply with any

 resulting recommendations, to submit to random drug screens, to not use any illegal

 drugs and only use prescription medications in the manner prescribed, to not engage

 in domestic violence, and to not engage in criminal activity. Respondent was granted

 supervised visitation for two hours per week, with the opportunity for additional

 supervised visitation in the community if she submitted three consecutive negative

 drug screens.

¶5 The first permanency planning hearing was held on 12 September 2017. In the

 order that resulted, the trial court found that respondent was currently in jail

 awaiting trial on new criminal charges involving drug use and theft and that she had

 not made any progress on her case plan. The court established a primary permanent
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 plan of guardianship, with a secondary plan of custody with a relative.

¶6 The next permanency planning hearing occurred on 5 December 2017. The

 parties agreed to a consent order which included findings that respondent had been

 released from jail and had begun to “lay some groundwork” for her case plan. The

 primary permanent plan was changed to reunification with a secondary plan of

 adoption.

¶7 The permanent plans remained unchanged through the 1 May 2018

 permanency planning hearing. However, in its order from that hearing, the trial court

 found that respondent had tested positive for opiates and that she was not making

 adequate progress on her case plan within a reasonable period of time.

¶8 On 21 August 2018, DSS filed a petition to terminate respondent’s parental

 rights on the grounds of neglect, willfully leaving Ann in foster care or a placement

 outside the home for more than twelve months without making reasonable progress

 toward correcting the conditions that led to her removal, willfully failing to pay a

 reasonable portion of Ann’s cost of care for the six months preceding the filing of the

 petition, and dependency. See N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). DSS social

 worker Toia Johnson verified the petition.

¶9 The trial court conducted a termination hearing on 24 September 2019. During

 the adjudication phase, Johnson was the only witness, and she testified that she

 would adopt the allegations in the termination petition as her testimony. There were
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 no objections to entering the petition into the record, and respondent’s counsel

 declined to cross-examine Johnson. At the conclusion of the adjudicatory phase, the

 trial court rendered its decision that grounds existed to terminate respondent’s

 parental rights. The case then proceeded to the dispositional phase.

¶ 10 Respondent did not arrive until midway through the disposition hearing. She

 was permitted to testify and recounted some of her progress, including her plan to

 enter into an in-patient substance abuse treatment program. On cross-examination,

 respondent admitted that she was addicted to heroin and that she had failed to satisfy

 many of the conditions of her case plan. After hearing the evidence and the arguments

 of counsel, the trial court rendered its determination that termination of respondent’s

 parental rights was in Ann’s best interest.

¶ 11 On 30 April 2020, the trial court entered two written orders terminating

 respondent’s parental rights to Ann.2 In its adjudication order, the court concluded

 that all four grounds for termination alleged by DSS existed, and in its disposition

 order, the court concluded that termination was in Ann’s best interests. Respondent

 appeals.

 II. Standing

¶ 12 Respondent’s first argument is that the trial court lacked subject matter

 2 The trial court’s orders also terminated the parental rights of Ann’s father, but he

 did not appeal the orders and is therefore not a party to this appeal.
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 jurisdiction to terminate her parental rights because the termination petition was not

 filed by a party with standing. “Standing is a necessary prerequisite to a court’s

 proper exercise of subject matter jurisdiction.” In re A.S.M.R., 375 N.C. 539, 542

 (2020) (cleaned up).

 The existence of subject matter jurisdiction is a matter of
 law and cannot be conferred upon a court by consent. A
 court’s lack of subject matter jurisdiction is not waivable
 and can be raised at any time, including for the first time
 upon appeal. We review questions of law de novo.

 In re N.P., 376 N.C. 729, 2021-NCSC-11, ¶ 5 (cleaned up). “This Court presumes the

 trial court has properly exercised jurisdiction unless the party challenging

 jurisdiction meets its burden of showing otherwise.” In re L.T., 374 N.C. 567, 569

 (2020).

¶ 13 To have standing to file a termination of parental rights case, a petitioner or

 movant must fall within one of the seven categories set out in N.C.G.S. § 7B-1103

 (2019). Further, N.C.G.S. § 7B-1104 requires the petition or motion initiating a

 termination action to include “facts sufficient to identify the petitioner or movant as

 one authorized by G.S. 7B-1103 to file a petition or motion.” N.C.G.S. § 7B-1104(2)

 (2019).

¶ 14 Section 7B-1103(a)(3) authorizes a termination petition to be filed by “[a]ny

 county department of social services, consolidated county human services agency, or

 licensed child-placing agency to whom custody of the juvenile has been given by a
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 court of competent jurisdiction.” The termination petition in this case alleged

 standing based on this provision:

 The petitioner is Toia Johnson, a social worker employed
 by the Iredell County Department of Social Services, whose
 address is Post Office Box 1146 / 549 Eastside Drive,
 Statesville, North Carolina 28687[.] The petitioner
 qualifies to bring this Petition to Terminate Parental
 Rights under N.C. Gen. Stat. §7B-1103(a)(3), as the Iredell
 County Department of Social Services has been given
 custody of the above-referenced juvenile by a court of
 competent jurisdiction, as set forth in the order attached
 hereto as “Exhibit #1” and incorporated herein by
 reference.

 Johnson also executed a sworn verification of the petition, in which she identified

 herself as “Social Worker Iredell County Dept. of Social Services.”

¶ 15 Respondent does not dispute that DSS had been given custody of Ann by a

 court of competent jurisdiction at the time the termination petition was filed. Instead,

 she argues that since “Ms. Johnson stated under oath that she was the petitioner in

 this matter[,]” the petition must have been filed in Johnson’s individual capacity. As

 an individual, Johnson did not satisfy any of the categories in N.C.G.S. § 7B-1103(a)

 that provide standing to file a termination petition. Respondent contends the

 termination orders should therefore be vacated.

¶ 16 Respondent provides an untenable interpretation of Johnson’s verified

 allegation describing the basis of her standing to file the termination petition. Her

 interpretation necessarily ignores the portions of the allegation where Johnson
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 explicitly identified herself as “a social worker employed by the Iredell County

 Department of Social Services,” where Johnson listed her address as that of DSS, and

 where Johnson alleged she had standing to file the petition under N.C.G.S. § 7B-

 1103(a)(3), which applies only to certain organizations such as departments of social

 services. Considering this additional context, the logical conclusion is that Johnson

 filed the termination petition in her capacity as a representative of DSS. Since it is

 clear from the record that the termination petition was filed by DSS, an organization

 with standing under N.C.G.S. § 7B-1103(a)(3), respondent cannot meet her burden of

 showing that the trial court lacked subject matter jurisdiction to consider and rule

 upon the petition to terminate her parental rights.

 III. Evidence Supporting Grounds for Termination

¶ 17 Respondent next raises a series of arguments regarding the evidence

 supporting the trial court’s adjudication of grounds for termination. She contends

 that Johnson’s oral adoption of the allegations from the termination petition resulted

 in the trial court improperly relying on the petition itself as the only adjudication

 evidence. Respondent further argues that the trial court’s findings, to the extent they

 were supported by competent evidence, failed to support the existence of any of the

 four grounds for termination.

 A. Adjudication Evidence Presented by DSS

¶ 18 As part of any termination of parental rights proceeding, the trial court must
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 adjudicate the existence of any of the grounds for termination alleged in the petition.

 At the adjudication hearing, the trial court must “take evidence [and] find the facts”

 necessary to support its determination of whether the alleged grounds for

 termination exist. N.C.G.S. § 7B-1109(e) (2019). “At the adjudicatory stage, the

 petitioner bears the burden of proving by ‘clear, cogent, and convincing evidence’ the

 existence of one or more grounds for termination under section 7B-1111(a) of the

 General Statutes.” In re A.U.D., 373 N.C. 3, 5–6 (2019).

¶ 19 The adjudication hearing in this case was brief. Johnson was called to the

 stand, and the DSS attorney began his direct examination:

 Q. Ms. Johnson, would you please state your name for the
 Court?

 A. Toia Johnson, former foster care social worker.

 Q. And were you in fact the social worker for [Ann]?

 A. Yes, I was.

 Q. And up to the filing of the petition, were you the social
 worker for [Ann]?

 A. Yes, I was.

 Q. And did you in fact sign a verification for the petition
 that was filed in this matter?

 A. Yes, I did.

 Q. And being that you’ve already signed a verification, have
 you in fact reviewed the contents of the juvenile petition to
 terminate parental rights–
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 A. Yes, I have.

 Q. – for this child? And after reviewing the contents, are
 you satisfied that the contents are true and accurate to the
 best of your knowledge?

 A. Yes, they are.

 Q. Would you adopt those contents as your testimony for
 today?

 A. Yes, I would.

 The DSS attorney then offered the petition into the record, and it was admitted

 without objection. The attorney next had Johnson verify the information in Ann’s

 birth certificate before ending his questioning. Neither the trial court nor the other

 parties asked Johnson any further questions.

¶ 20 Respondent contends that DSS’s proffer of evidence amounted to submitting

 the allegations from its verified petition as its only adjudication evidence. She notes

 that the Court of Appeals has repeatedly reversed juvenile orders that were based

 solely on documentary evidence and argues we should reach the same result here.

 See, e.g., Thrift v. Buncombe County DSS, 137 N.C. App. 559, 562–64 (2000)

 (reversing a neglect adjudication that was based only on the verified allegations in

 the juvenile petition); In re A.M., 192 N.C. App. 538, 542 (2008) (reversing a

 termination of parental rights order that was based “solely on the written reports of

 DSS and the guardian ad litem, prior court orders, and oral arguments by the

 attorneys involved in the case”); In re N.G., 195 N.C. App. 113, 118 (2009) (reversing
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 a termination order where DSS offered only a court report as evidence and “presented

 no oral testimony to carry its burden of proof”).

¶ 21 Respondent’s argument ignores the salient difference between the above Court

 of Appeals’ cases and this case: here, DSS offered live witness testimony. The lack of

 oral testimony was a determinative factor in the prior Court of Appeals’ holdings cited

 by respondent. As the court explained in In re A.M.:

 In the case sub judice, the trial court entered an order
 based solely on the written reports of DSS and the
 guardian ad litem, prior court orders, and oral arguments
 by the attorneys involved in the case. DSS did not present
 any witnesses for testimony, and the trial court did not
 examine any witnesses. We conclude, therefore, that the
 trial court failed to hold a proper, independent termination
 hearing. Consideration of written reports, prior court
 orders, and the attorney’s oral arguments was proper;
 however, in addition the trial court needed some oral
 testimony. See [N.C.G.S.] § 1A-1, Rule 43(a). However, this
 opinion should not be construed as requiring extensive oral
 testimony. We note that the trial courts may continue to
 rely upon properly admitted reports or other documentary
 evidence and prior orders, as long as a witness or witnesses
 are sworn or affirmed and tendered to give testimony.

 In re A.M., 192 N.C. App. at 542.

¶ 22 In this case, DSS called Johnson as a witness and tendered her to give

 testimony. While Johnson’s testimony was not extensive, she orally reaffirmed, under

 oath, all of the allegations from the termination petition. Respondent was given the

 opportunity to cross-examine Johnson with respect to any of these allegations, and

 she declined to do so. In light of Johnson’s testimony, the trial court conducted a
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 proper adjudication hearing in accordance with N.C.G.S. § 7B-1109(e), and it did not

 err by relying on Johnson’s testimony adopting the allegations in the termination

 petition when it entered its adjudication order.

 B. Grounds for Termination

¶ 23 Respondent also contends that the trial court’s findings of fact did not support

 its conclusions of law that four grounds for termination existed. Ultimately, we

 conclude that errors related to each of the four grounds require reversal.

¶ 24 When reviewing the trial court’s adjudication of grounds for termination, we

 examine whether the court’s findings of fact “are supported by clear, cogent and

 convincing evidence and [whether] the findings support the conclusions of law.” In re

 E.H.P., 372 N.C. 388, 392 (2019) (quoting In re Montgomery, 311 N.C. 101, 111

 (1984)). Any unchallenged findings are “deemed supported by competent evidence

 and are binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019). The trial court’s

 conclusions of law are reviewed de novo. In re C.B.C., 373 N.C. 16, 19 (2019).

 1. Neglect

¶ 25 The first ground for termination found by the trial court was neglect under

 N.C.G.S. § 7B-1111(a)(1). This subsection allows for parental rights to be terminated

 if the trial court finds that the parent has neglected their child to such an extent that

 the child fits the statutory definition of a “neglected juvenile.” N.C.G.S. § 7B-

 1111(a)(1) (2019). A neglected juvenile is defined, in relevant part, as a juvenile
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 “whose parent, guardian, custodian, or caretaker does not provide proper care,

 supervision, or discipline; . . . or who lives in an environment injurious to the

 juvenile’s welfare[.]” N.C.G.S. § 7B-101(15) (2019).

 Termination of parental rights based upon this statutory
 ground requires a showing of neglect at the time of the
 termination hearing or, if the child has been separated
 from the parent for a long period of time, there must be a
 showing of a likelihood of future neglect by the parent.
 When determining whether such future neglect is likely,
 the district court must consider evidence of changed
 circumstances occurring between the period of past neglect
 and the time of the termination hearing.

 In re R.L.D., 375 N.C. 838, 841 (2020) (cleaned up).

¶ 26 In its termination order, the trial court concluded that the neglect ground

 existed because there was a likelihood of future neglect if Ann were returned to

 respondent’s care. It is well established that when deciding whether future neglect is

 likely, “[t]he determinative factors must be the best interests of the child and the

 fitness of the parent to care for the child at the time of the termination proceeding.”

 In re Ballard, 311 N.C. 708, 715 (1984).

¶ 27 However, the only evidence offered by DSS at adjudication was Johnson’s

 testimony adopting the termination petition, which was filed on 21 August 2018. The

 termination hearing did not occur until more than thirteen months later, on 24

 September 2019. Thus, the allegations in the petition do not shed any light on

 respondent’s fitness to care for Ann at the time of the termination hearing, and the
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 trial court erred by relying on the stale information in the petition as its only support

 for this ground.3 See Ballard, 311 N.C. at 715.

¶ 28 Both DSS and the guardian ad litem attempt to supplement the evidence

 presented during the adjudication hearing with respondent’s testimony during the

 disposition hearing in order to salvage the trial court’s adjudication of this ground.

 We reject this attempt, as we have previously held that dispositional evidence cannot

 be used to support the trial court’s adjudicatory determinations. See In re Z.J.W., 376

 N.C. 760, 2021-NCSC-13, ¶ 17 (“In the event that the trial court relied upon this

 dispositional evidence as support for its adjudicatory finding[,] . . . we agree with

 longstanding Court of Appeals precedent that it was error to do so.”). Respondent’s

 testimony in this case occurred after the trial court had already rendered its

 adjudicatory decision and moved to the dispositional phase of the hearing, and as a

 result, the testimony could not provide competent evidence to support the already-

 rendered adjudication.

¶ 29 Since there was no competent evidence from which the trial court could

 determine respondent’s fitness to care for Ann at the time of the adjudication hearing,

 3 Respondent notes that, even though no evidence was admitted regarding
 circumstances after August 2018, many of the trial court’s findings could be interpreted to
 “suggest events or facts occurring or existing after August 2018 . . . or at the time of the
 termination hearing[.]” We agree that all such findings are erroneous, and thus we disregard
 any finding that implicates post-petition evidence or events, as there is no competent
 evidence to support such findings. See In re J.M.J.-J., 374 N.C. 553, 559 (2020) (disregarding
 adjudicatory findings of fact not supported by clear, cogent, and convincing evidence).
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 the court’s conclusion that “the probability of repetition of neglect is high should the

 minor child be returned to the care of” respondent is unsupported. Accordingly, the

 trial court’s adjudication of the neglect ground must be reversed.

 2. Willful Failure to Make Reasonable Progress

¶ 30 The trial court also found respondent’s rights were subject to termination

 under N.C.G.S. § 7B-1111(a)(2), which permits the court to terminate parental rights

 if the parent “has willfully left the juvenile in foster care or placement outside the

 home for more than 12 months without showing to the satisfaction of the court that

 reasonable progress under the circumstances has been made in correcting those

 conditions which led to the removal of the juvenile.” N.C.G.S. § 7B-1111(a)(2) (2019).

 Termination under this ground requires the trial court to
 perform a two-step analysis where it must determine by
 clear, cogent, and convincing evidence whether (1) a child
 has been willfully left by the parent in foster care or
 placement outside the home for over twelve months, and
 (2) the parent has not made reasonable progress under the
 circumstances to correct the conditions which led to the
 removal of the child.

 In re Z.A.M., 374 N.C. 88, 95 (2020). A parent’s reasonable progress “is evaluated for

 the duration leading up to the hearing on the motion or petition to terminate parental

 rights.” In re J.S., 374 N.C. 811, 815 (2020). Thus, this ground must fail for the same

 reason as the trial court’s adjudication of the neglect ground. The most recent

 evidence of respondent’s progress was more than thirteen months before the

 termination hearing. There was no competent evidence regarding respondent’s
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 progress for the period leading up to the termination hearing.4 Accordingly, we

 reverse this ground for termination as well.

 3. Dependency

¶ 31 As a third ground for termination, the trial court found that respondent’s

 parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(6).

 That subsection permits a parent’s rights to be terminated upon a showing that (1)

 “the parent is incapable of providing for the proper care and supervision of the

 juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S.

 7B-101, and . . . there is a reasonable probability that such incapability will continue

 for the foreseeable future[,]” and (2) “the parent lacks an appropriate alternative child

 care arrangement.” N.C.G.S. § 7B-1111(a)(6) (2019). Like the adjudication of grounds

 pursuant to subsections (a)(1) and (2), an adjudication of dependency as a ground for

 termination under subsection (a)(6) must be based on an examination of the parent’s

 ability to care for and supervise their child at the time of the adjudication hearing.

 See In re C.L.H., 376 N.C. 614, 2021-NCSC-1, ¶ 12 (reversing an adjudication under

 N.C.G.S. § 7B-1111(a)(6) because “the trial court made no finding of fact, and there

 was no evidence presented, that at the time of the termination hearing respondent

 4 As with neglect, the GAL cites a portion of respondent’s dispositional testimony as

 support for this ground. We reiterate that dispositional evidence cannot be used to support
 the adjudication of termination grounds. See In re Z.J.W., 376 N.C. 760, 2021-NCSC-13, ¶
 17.
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 suffered from any condition which rendered him incapable of providing proper care

 or supervision” to his child). As with the prior two grounds for termination, the only

 competent evidence presented to support the dependency ground was from at least

 thirteen months prior to the hearing, and thus, there was no evidence presented as

 to respondent’s condition at the time of the termination hearing. Consequently, the

 trial court erred by adjudicating this ground for termination, and the trial court’s

 adjudication of dependency is also reversed.

 4. Willful Failure to Pay a Reasonable Portion of Ann’s Cost of Care

¶ 32 Finally, the trial court found that respondent's parental rights were subject to

 termination under subsection (a)(3), which provides:

 The juvenile has been placed in the custody of a county
 department of social services, a licensed child-placing
 agency, a child-caring institution, or a foster home, and the
 parent has for a continuous period of six months
 immediately preceding the filing of the petition or motion
 willfully failed to pay a reasonable portion of the cost of
 care for the juvenile although physically and financially
 able to do so.

 N.C.G.S. § 7B-1111(a)(3) (2019). In this case, the termination petition was filed on 21

 August 2018, and the relevant period for this ground was therefore 21 February

 through 21 August 2018.

¶ 33 The trial court made the following finding with respect to this ground:

 Respondent Mother has been employed at times during
 this case and always remained able bodied however she has
 paid zero dollars of child support for [Ann] since she came
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 into care. Zero dollars is not a reasonable amount of child
 support based on Respondent Mother’s actual income nor
 her ability to earn. Respondent Mother has willfully failed
 to pay a reasonable cost of care for the juvenile.

This finding is not adequately tailored to the relevant six-month period. In In re K.H.,

we determined a similar finding failed to support an (a)(3) adjudication:

 In the TPR order, the trial court made factual findings that
 respondent “worked at Shoe Show as well as Cook Out in
 2018 and has not paid any monies towards the cost of care
 for the juvenile”; that “at various points in time,
 [respondent] was employed, although that employment
 was part-time”; that “[respondent] is physically and
 financially able to pay a reasonable portion of the child’s
 care, and thus has the ability to pay an amount greater
 than zero”; that “[respondent] has [not] made a significant
 contribution towards the cost of care”; and that “[t]he total
 cost of care for [Kaitlyn] through June 2018 is $14,170.35.”

 However, none of these findings—nor any others related to
 this ground for termination—address the specific, relevant
 six-month time period from 8 February 2018 to 8 August
 2018. Therefore, we conclude that the trial court’s findings
 of fact are insufficient to support its conclusion of law that
 there were grounds to terminate respondent’s parental
 rights under N.C.G.S. § 7B-1111(a)(3), which specifically
 requires that “the parent has for a continuous period of six
 months immediately preceding the filing of the petition or
 motion willfully failed to pay a reasonable portion of the
 cost of care for the juvenile although physically and
 financially able to do so.” N.C.G.S. § 7B-1111(a)(3)
 (emphasis added). Accordingly, we reverse the trial court
 on this issue.

In re K.H., 375 N.C. at 616–17 (2020). Similarly, the trial court’s finding in this case

references respondent’s sporadic employment “at times during this case,” and this
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

 reference covers a period of more than eighteen months, from 15 February 2017, when

 the initial juvenile petition was filed, until 21 August 2018, when the termination

 petition was filed. The trial court’s finding does not specifically address the six-month

 period prior to the filing of the termination petition and therefore fails to demonstrate

 that respondent “has for a continuous period of six months immediately preceding

 the filing of the petition or motion willfully failed to pay a reasonable portion of the

 cost of care for the juvenile although physically and financially able to do so.” N.C.G.S.

 § 7B-1111(a)(3). Accordingly, this ground for termination is unsupported and must be

 reversed.5

 IV. Conclusion

¶ 34 The termination of parental rights petition was filed by DSS through its

 representative, Johnson, and DSS had standing to file a petition under N.C.G.S. § 7B-

 1103(a)(3). The trial court did not err in relying upon the allegations in the

 5 The dissent argues “the facts in In re K.H. are distinct from this case” and would

 distinguish the present case on the ground that “this case does not involve a minor parent.”
 We need not delve into the “nuances in In re K.H.,” namely that “the factual findings that the
 respondent was a minor and had lived with her child in the same foster care placement, both
 as minors,” to conclude those facts were irrelevant to our holding. The trial court’s findings
 were insufficient to support the conclusions of law because they failed to “address the specific,
 relevant six-month time period” required by G.S. § 7B-1111(a)(3), In re K.H., 375 N.C. at 616.
 The respondent’s status as a minor had no bearing upon the Court’s decision to reverse, see
 id. at 616–17, and was, therefore, obiter dicta. See Hayes v. City of Wilmington, 243 N.C. 525,
 537 (1956) (“Official character attaches only to those utterances of a court which bear directly
 upon the specific and limited questions which are presented to it for solution in the proper
 course of judicial proceedings. Over and above what is needed for the solution of these
 questions, its deliverances are unofficial.” (cleaned up)).
 IN RE Z.G.J.

 2021-NCSC-102

 Opinion of the Court

termination petition when making its findings of fact, as the petition was introduced

through the testimony of Johnson and was subject to cross-examination. However, by

relying solely on the evidence from a termination petition that was filed thirteen

months prior to the hearing, the trial court erred by concluding grounds for

termination existed under subsections (a)(1), (2), and (6), since each of those grounds

requires evaluating the evidence as of the time of the termination hearing. Moreover,

the trial court’s finding of fact with respect to subsection (a)(3) was insufficient to

show that respondent willfully failed to pay an adequate portion of Ann’s cost of care

for a continuous period of six months immediately preceding the filing of the

termination petition. In light of the foregoing, the orders terminating respondent’s

parental rights must be reversed.6 Since we are reversing the termination orders, we

need not address respondent’s final argument, that she received ineffective assistance

from her trial counsel.

 REVERSED.

 6 Although respondent did not specifically challenge the trial court’s disposition order,

that order necessarily must be reversed since the adjudication order has been reversed. See
N.C.G.S. § 7B-1110(a) (“After an adjudication that one or more grounds for terminating a
parent’s rights exist, the court shall determine whether terminating the parent’s rights is in
the juvenile's best interest.” (emphasis added)).
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 Justice BARRINGER concurring in part, dissenting in part.

¶ 35 While I concur with the majority’s holdings that the termination-of-parental-

 rights petition was filed by the Iredell County Department of Social Services (DSS)

 through its representative, that DSS had standing to file a petition under N.C.G.S.

 § 7B-1103(a)(3), and that the trial court did not err in relying upon the allegations in

 the termination petition when making its findings of fact, I would affirm the trial

 court’s order terminating respondent’s parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(3). Respondent’s ineffective of assistance counsel claim is without merit, and

 the findings of facts support the trial court’s conclusion of law concerning termination

 under N.C.G.S. § 7B-1111(a)(3). Therefore, I respectfully concur in part and dissent

 in part.

 I. Background

¶ 36 DSS received reports that respondent, after shooting up heroin in the back of

 a vehicle, had overdosed and was found lying on the ground next to a vehicle where

 the juvenile, Ann, was strapped into her car seat inside. After receiving this report,

 DSS filed a petition alleging that Ann was an abused and neglected juvenile and

 obtained nonsecure custody. On 21 March 2017, respondent consented to the

 adjudication and dispositional order that adjudicated Ann to be an abused and

 neglected juvenile.

¶ 37 Over a year later, on 21 August 2018, DSS filed a verified petition to terminate
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 respondent’s parental rights. DSS alleged as grounds for termination N.C.G.S. § 7B-

 1111(a)(1)–(3) and (6). On 10 October 2018, respondent was personally served with

 the summons and the petition to terminate respondent’s parental rights. Respondent

 never filed an answer or other responsive pleading.

¶ 38 At the termination hearing, Toia Johnson, a former foster care social worker

 for DSS, testified that she was the social worker for Ann up until the filing of the

 termination petition, that she had verified the termination petition, that she had

 reviewed the contents of the termination petition, that the contents of the termination

 petition were true and accurate to the best of her knowledge, and that she adopted

 the allegations in the termination petition as her testimony. Then, counsel for DSS

 introduced and moved to admit the termination petition into evidence. Counsel for

 respondent informed the trial court that she had no objection to the admission of the

 termination petition into evidence. No other party objected to the admission, and the

 trial court admitted the termination petition into evidence. DSS informed the trial

 court that this concluded its evidence for adjudication. After hearing from the

 respondent parents’ trial counsel that as to the adjudication phase they were not

 tendering evidence or argument, the trial court found “by clear, cogent, and

 convincing evidence that grounds exist[ed] to terminate the parental rights of the

 [r]espondent [p]arents, specifically as alleged in the petition to terminate parental

 rights.”
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

¶ 39 The trial court then ordered that the matter proceed to disposition. At the

 disposition stage of the termination hearing, the trial court heard the evidence,

 including respondent’s testimony in which she admitted that she was addicted to

 heroin, that she had failed to satisfy many of the conditions of her case plan, and that

 she was and had been continuously employed except for the brief time she spent in

 the county jail before making bond. Then, the trial court heard the arguments of

 counsel, including from respondent’s trial counsel. Upon the conclusion of counsels’

 arguments, the trial court orally made findings of fact to be supplemented by a

 written order, concluded that termination was in the best interest of Ann, and

 terminated the rights of respondent to Ann.1

¶ 40 The trial court then signed written orders consistent with its oral holdings

 addressing adjudication and disposition. Respondent appealed.

 II. Ineffective Assistance of Counsel

¶ 41 Respondent contends that she was denied the effective assistance of counsel

 because her trial counsel “failed to object to the introduction of the [termination]

 petition as evidence [at] the termination[-]of[-]parental[-]rights [hearing].”

 Parents have a right to counsel in all proceedings dedicated
 to the termination of parental rights. Counsel necessarily
 must provide effective assistance, as the alternative would
 render any statutory right to counsel potentially
 meaningless. To prevail on a claim of ineffective assistance

 1 The trial court’s orders also terminated the parental rights of Ann’s father, but he

 did not appeal the orders and is therefore not a party to this appeal.
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 of counsel, respondent must show that counsel’s
 performance was deficient and the deficiency was so
 serious as to deprive him of a fair hearing. To make the
 latter showing, the respondent must prove that there is a
 reasonable probability that, but for counsel’s errors, there
 would have been a different result in the proceedings.

 In re G.G.M., 377 N.C. 29, 2021-NCSC-25, ¶ 35 (cleaned up).

¶ 42 Respondent alleges that the termination petition was inadmissible because a

 party may not introduce and have admitted into evidence its own pleading.

 Respondent also claims prejudice, asserting that the termination petition was the

 only evidence supporting the trial court’s adjudication.

¶ 43 Respondent’s argument of ineffective assistance of counsel fails to show that

 “there is a reasonable probability that, but for counsel’s errors, there would have been

 a different result in the proceedings.” In re G.G.M., ¶ 35. Here, Johnson, who verified

 the termination petition, testified. She testified that the contents of the termination

 petition were true and accurate to the best of her knowledge and adopted the

 allegations in the termination petition as her testimony. Johnson’s testimony

 provides the same support for the trial court’s adjudication as the admission of the

 termination petition, and respondent has not argued or shown Johnson’s testimony

 to be improper. Therefore, respondent has failed to carry her burden to show that she

 received ineffective assistance of counsel.
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 III. Grounds for Termination

¶ 44 Respondent presents arguments for each of the grounds found by the trial court

 as a basis for termination of respondent’s parental rights to Ann. However, as

 competent evidence supports the findings of fact, and the findings of fact support the

 trial court’s conclusion of law for termination of respondent’s parental rights to Ann

 pursuant to N.C.G.S. § 7B-1111(a)(3), I would affirm the termination-of-parental-

 rights order on this ground. To terminate parental rights, a finding of only one ground

 is necessary. N.C.G.S. § 7B-1111(a) (2019); see also In re A.R.A., 373 N.C. 190, 194

 (2019). Thus, respondent’s remaining arguments concerning the other grounds need

 not be addressed.

¶ 45 When reviewing a trial court’s adjudication under N.C.G.S. § 7B-1111, this

 Court “determine[s] whether the findings are supported by clear, cogent and

 convincing evidence and the findings support the conclusions of law.” In re

 Montgomery, 311 N.C. 101, 111 (1984). “The trial court’s conclusions of law are

 reviewable de novo on appeal.” In re C.B.C., 373 N.C. 16, 19 (2019). “Findings of fact

 not challenged by respondent are deemed supported by competent evidence and are

 binding on appeal.” In re T.N.H., 372 N.C. 403, 407 (2019) (citing Koufman v.

 Koufman, 330 N.C. 93, 97 (1991)).

¶ 46 Subsection 7B-1111(a)(3) of the General Statutes of North Carolina provides

 that a trial court may terminate the parental rights upon concluding that
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 [t]he juvenile has been placed in the custody of a county
 department of social services, a licensed child-placing
 agency, a child-caring institution, or a foster home, and the
 parent has for a continuous period of six months
 immediately preceding the filing of the petition or motion
 willfully failed to pay a reasonable portion of the cost of
 care for the juvenile although physically and financially
 able to do so.

 N.C.G.S. § 7B-1111(a)(3). “[I]rrespective of the parent’s wealth or poverty,” a parent

 is required “to pay a reasonable portion of the child’s foster care costs.” In re Clark,

 303 N.C. 592, 604 (1981). “A parent is required to pay that portion of the cost of foster

 care for the child that is fair, just and equitable based upon the parent’s ability or

 means to pay.” Id.

¶ 47 Respondent first challenges finding of fact 24 as “insufficient on its face,”

 stating that the last sentence is a conclusion of law, the term “child support” rather

 than “foster care” is used, and there is no mention of the six-month period preceding

 the filing of the termination-of-parental-rights petition. Second, respondent alleges

 that there is no evidence of a child support order, respondent’s actual income, the

 dates of respondent’s employment, or her place of employment or earnings during the

 six-month period preceding the filing of the termination-of-parental-rights petition.

¶ 48 Respondent’s challenges are misplaced. This Court reviews findings of fact to

 determine whether they are supported by clear, cogent, and convincing evidence, and

 if they are, the findings of fact of the trial court are deemed conclusive. In re J.A.M.,

 370 N.C. 464, 466–67 (2018) (per curiam) (reversing the Court of Appeals decision for
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 misapplying the standard of review for challenged findings of fact). Appellate courts

 “are bound by the trial courts’ findings of fact where there is some evidence to support

 those findings, even though the evidence might sustain findings to the contrary.” In re

 Montgomery, 311 N.C. at 110–11.

¶ 49 Respondent’s arguments do not dispute the sufficiency of the evidence for what

 the trial court found as facts. In paragraph 24 of the order on adjudication of the

 termination-of-parental-rights hearing, the trial court found by clear, cogent, and

 convincing evidence the following:

 Respondent [m]other has been employed at times during
 this case and always remained able bodied however she has
 paid zero dollars of child support for [Ann] since she came
 into care. Zero dollars is not a reasonable amount of child
 support based upon [r]espondent [m]other’s actual income
 [ ]or her ability to earn. Respondent [m]other has willfully
 failed to pay a reasonable cost of care for the juvenile.

¶ 50 Respondent correctly observes that the trial court used the term “child

 support” but does not dispute the evidentiary basis for the finding that respondent

 paid “zero dollars of child support.” Respondent also correctly observes that the

 findings of fact do not refer to the relevant six-month period applicable to N.C.G.S.

 § 7B-1111(a)(3) but does not dispute the evidentiary basis for the finding that

 respondent “has paid zero dollars of child support for [Ann] since she came into care.”

¶ 51 Additionally, respondent complains that there is no evidence of a court order

 requiring child support payments or a child support order and no evidence of
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 respondent’s numerical amount of income, place of employment, or dates of

 employment, during the relevant six-month period or otherwise. However, because

 the trial court did not find there was a court order or child support order or the specific

 figures, places of employment, or dates of respondent’s employment, these are not

 challenges of the trial court’s findings of fact and the evidentiary support for them.

¶ 52 Contrary to respondent’s argument, it is also well established that “[t]he

 determination that respondent acted ‘willfully’ is a finding of fact rather than a

 conclusion of law.” In re J.S., 374 N.C. 811, 818 (2020) (citing Pratt v. Bishop, 257

 N.C. 486, 501 (1962)). Thus, the last sentence of the trial court’s finding of fact,

 finding willfulness, is reviewed as a finding of fact for the sufficiency of the evidence.

 See id. (applying the appropriate standard of review to a finding of willfulness even

 when mislabeled as a conclusion of law).

¶ 53 However, even if properly challenged, Johnson’s testimony adopting the

 allegations in the petition supports the findings of fact made by the trial court in

 paragraph 24. Johnson’s testimony, as also set forth in the verified petition

 concerning N.C.G.S. § 7B-1111(a)(3), was as follows:

 [t]he above-named juvenile has been placed in the custody
 of the Iredell County Department of Social Services and in
 a foster home, and the [r]espondent [m]other, for a
 continuous period of six months next preceding the filing of
 the petition, has willfully failed for such period to pay a
 reasonable portion of the cost of care for the juvenile
 although physically and financially able to do so.
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 i. [The respondent parents had funds available to
 them to pay for services and treatments through
 respondent mother’s reported employment and
 respondent father’s disability benefits.]

 ii. [Ann] has been placed in the custody of the Iredell
 County Department of Social Services and in a foster
 home since February 15, 2017.

 iii. The total estimated cost of care for [Ann] from
 February 15, 2017 through July 31, 2018 is
 $24,933.84.

 iv. The [r]espondent [m]other has paid $0.00 in support
 for the benefit of [Ann].

 v. The [r]espondent [m]other is able-bodied and has
 reported being employed or searching for
 employment throughout the pendency of the
 underlying action.

¶ 54 Respondent’s contention instead is best understood as arguing that for the

 reasons argued in her brief and previously summarized, the findings of fact are not

 sufficient to support the conclusion of law.

 This Court reviews de novo the issue of whether a trial
 court’s adjudicatory findings of fact support its conclusion
 of law that grounds existed to terminate parental rights
 pursuant to N.C.G.S. § 7B-1111(a). Under a de novo
 review, the court considers the matter anew and freely
 substitutes its own judgment for that of the trial court.

 In re T.M.L., 377 N.C. 369, 2021-NCSC-55, ¶ 15 (cleaned up).

¶ 55 This Court has already held that “[t]he absence of a court order, notice, or

 knowledge of a requirement to pay support is not a defense to a parent’s obligation to
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 pay reasonable costs, because parents have an inherent duty to support their

 children.” In re S.E., 373 N.C. 360, 366 (2020). Thus, the absence of a finding

 regarding a court order or child support order does not defeat a conclusion of law

 pursuant to N.C.G.S. § 7B-1111(a)(3).

¶ 56 Further, the use of the term “child support” is not confusing or inappropriate

 in the context presented in this termination-of-parental-rights order. While the trial

 court could have used the term “cost of foster care,” we understand what the trial

 court found when it used the term “child support” in its finding of fact. See generally

 N.C.G.S. § 7B-1111(a)(3) (establishing that “willfully fail[ing] to pay a reasonable

 portion of the cost of care for the juvenile” is a ground for terminating parental rights).

¶ 57 Finally, as the majority cites, this Court in one case, In re K.H., 375 N.C. 610

 (2020) concluded that “the findings of fact [were] insufficient to support [the trial

 court’s] conclusion of law that there were grounds to terminate respondent’s parental

 rights under N.C.G.S. § 7B-1111(a)(3)” because “none of these findings . . . address

 the specific, relevant six-month time period from 8 February 2018 to 8 August 2018.”

 Id. at 617. However, the facts in In re K.H. are distinct from this case. This Court

 summarized the facts in In re K.H. as follows:

 In 2017 a sixteen-year-old mother and her nine-
 month-old baby were taken into custody by the Cabarrus
 County Department of Social Services (DSS) and placed in
 the same foster home. After six months together, the child
 was moved to a different foster home apart from her
 mother. Less than eight months later, DSS filed a motion
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 to terminate respondent-mother’s parental rights to her
 child.

 Id. at 611.

¶ 58 One of the grounds for termination was N.C.G.S. § 7B-1111(a)(3). Id. at 612.

 In that matter, “the relevant six-month period of time during which the trial court

 [had to] determine whether respondent was able to pay a reasonable portion of the

 cost of [the child’s] care but failed to do so was from 8 February 2018 to 8 August

 2018.” Id. at 616. The trial court had found that

 respondent worked at Shoe Show as well as Cook Out in
 2018 and has not paid any monies towards the cost of care
 for the juvenile; that at various points in time, respondent
 was employed, although that employment was part-time;
 that respondent is physically and financially able to pay a
 reasonable portion of the child’s care, and thus has the
 ability to pay an amount greater than zero; that respondent
 has not made a significant contribution towards the cost of
 care; and that the total cost of care for [the juvenile]
 through June 2018 is $14,170.35.

 Id. at 616–17 (cleaned up).

¶ 59 The trial court in K.H. had also found that the respondent was a minor when

 the juvenile proceeding was initiated, that the respondent lived with her child in the

 same foster care placement, both as minors for a period in 2017 and in 2018, and that

 respondent turned eighteen years old only weeks before the termination hearing.

¶ 60 In contrast, as reflected in the trial court’s findings of facts, this case does not

 involve a minor parent. Thus, the nuances of In re K.H.—the factual findings that the
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 respondent was a minor and had lived with her child in the same foster care

 placement, both as minors—are not before this Court. While the majority dismisses

 these factual findings as not determinative to this Court’s holding in In re K.H.,

 construing the decision to not turn on these factual findings leads to an absurd result:

 findings by a trial court that a respondent, despite having the ability to pay cost of

 care, “has not paid any monies towards the cost of care for the juvenile” fails to satisfy

 N.C.G.S. § 7B-1111(a)(3). Inherently, a finding that a respondent has never paid

 monies for the cost of care would encompasses “[the] period of six months immediately

 preceding the filing of the petition or motion.” N.C.G.S. § 7B-1111(a)(3). Thus, the

 findings of fact do “address the specific, relevant six-month time period from 8

 February 2018 to 8 August 2018.” In re K.H., 375 N.C. at 617.

¶ 61 In this matter, the finding of fact that respondent had “always remained able

 bodied however she has paid zero dollars of child support for [Ann] since she came

 into care” covers the relevant six-month period. The trial court further found that the

 amount of zero was “not a reasonable amount of child support based upon

 [r]espondent-[m]other’s actual income [ ]or her ability to earn” and that she “willfully

 failed to pay.” While the trial court does not precisely name the relevant six-month

 period, nothing in N.C.G.S. § 7B-1111(a)(3) requires an express reference where the

 plain language and context of the trial court’s findings of fact address and encompass

 the relevant six-month period. This Court has recognized this principle in In re
 IN RE Z.G.J.

 2021-NCSC-102

 Barringer, J., concurring in part, dissenting in part

 L.M.T., 367 N.C. 165 (2013) and In re H.A.J., 377 N.C. 43, 2021-NCSC-26. A trial

 court’s findings of fact need to “address the necessary statutory factors” but need not

 use “the precise statutory language.” In re H.A.J., ¶ 16 (addressing sufficiency of

 findings to satisfy N.C.G.S. § 7B-906.2(d)); see also In re L.M.T., 367 N.C. at 168

 (addressing sufficiency of findings to satisfy former N.C.G.S. § 7B-507(b)(1) (2011));

 cf. In re K.R.C., 374 N.C. 849, 861 n.7 (2020) (“Because the order sub judice lacks any

 ultimate findings addressing the gravamen of N.C.G.S. § 7B-1111(a), we need not

 consider the degree to which our holding in In re L.M.T. applies to an adjudicatory

 order entered pursuant to N.C.G.S. §§ 7B-1109(e) and -1110(c).”).

¶ 62 Thus, exercising judgment anew, the binding findings of fact support the trial

 court’s conclusion of law pursuant to N.C.G.S. § 7B-1111(a)(3). As respondent has not

 challenged the best interest determination, the termination of respondent’s parental

 rights to Ann should be affirmed on the ground of N.C.G.S. § 7B-1111(a)(3).

 IV. Conclusion

¶ 63 For the foregoing reasons, the decision of the trial court should be upheld on

 the ground for termination of N.C.G.S. § 7B-1111(a)(3). Accordingly, I respectfully

 dissent.

 Chief Justice NEWBY and Justice BERGER join in this concurring in part and

 dissenting in part opinion.